UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LEO KEARNS, JR. #423024**                  **CIVIL ACTION**

**versus**                                                              **NO. 07-3815**

**STATE OF LOUISIANA**                         **SECTION: "F" (3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Leo Kearns, Jr., is a state prisoner incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana. On April 26, 2004, he pleaded guilty to armed robbery in violation of La.Rev.Stat.Ann. § 14:64.[2] On July 9, 2004, he was sentenced to a term of ten years imprisonment without benefit of probation, parole, or suspension of sentence.[3] On January 26, 2005, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4] He did not seek review of that judgment in the Louisiana Supreme Court.[5]

On or after February 28, 2006, petitioner filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of mandamus in which he claimed that he had filed an application for post-conviction relief with the state district court on June 11, 2005, but had received no ruling on that application.[6] On March 27, 2006, the Court of Appeal denied the mandamus application because there was no record of any such filing in the state district court.[7]

---

[2] State Rec., Vol. II of V, transcript of April 26, 2004; State Rec., Vol. I of V, minute entry dated April 26, 2004; State Rec., Vol. I of V, guilty plea form.

[3] State Rec., Vol. I of V, minute entry dated July 9, 2004.

[4] State v. Kearns, No. 2004-KA-1495 (La. App. 4th Cir. Jan. 26, 2005) (unpublished); State Rec., Vol. II of V.

[5] State Rec., Vol. IV of V, certification from the Deputy Clerk of the Louisiana Supreme Court.

[6] State Rec., Vol. IV of V. Petitioner dated the mandamus application February 28, 2006; therefore, even under the state "mailbox rule," it could not have been filed prior to that date. See Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006) (federal courts must apply Louisiana's "mailbox rule" when determining the filing date for state court filings).

[7] State v. Kearnes [sic], No. 2006-K-0248 (La. App. 4th Cir. Mar. 27, 2006) (unpublished); State Rec., Vol. IV of V.

In the interim, on or after March 1, 2006, petitioner filed with the state district court a motion for an extension of time to file a post-conviction application.[8] That motion was denied on March 21, 2006.[9]

On or after May 7, 2006, petitioner filed with state district court an application for post-conviction relief in which he asserted the same claims he now asserts in this federal application.[10] That state application was denied on July 21, 2006.[11] His related writ applications were likewise denied by Louisiana Fourth Circuit Court of Appeal on July 31, 2006,[12] and by the Louisiana Supreme Court on May 11, 2007.[13]

On June 29, 2007, petitioner filed the instant federal application for *habeas corpus* relief. In support of his application, petitioner raises the following claims:

    1. Petitioner's guilty plea was unlawfully induced and involuntary;

    2. Petitioner received ineffective assistance of counsel; and

    3. Petitioner is falsely imprisoned because the prosecution failed to prove his guilt beyond a reasonable doubt.

---

[8] State Rec., Vol. V of V. Petitioner dated that motion March 1, 2006.

[9] State Rec., Vol. V of V, Judgment dated March 21, 2006.

[10] State Rec., Vol. V of V. Petitioner signed that application on May 7, 2006.

[11] State Rec., Vol. V of V, Order dated July 21, 2006.

[12] State v. Kearns, No. 2006-K-0923 (La. App. 4th Cir. July 31, 2006) (unpublished); State Rec., Vol. IV of V.

[13] State *ex rel.* Kearns v. State, 955 So.2d 1274 (La. 2007) (No. 2006-KH-2131); State Rec., Vol. IV of V.

Timeliness

The state argues that petitioner's federal application is untimely.[14]  The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction becomes "final."  Under the AEDPA, a judgment is considered "final" upon "the conclusion of direct review or the expiration of time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).[15]  As noted, on January 26, 2005, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.  Therefore, at the latest, his conviction and sentence became final on February 25, 2005, when his period expired for filing a writ application with the Louisiana Supreme Court to challenge the judgment of the Court of Appeal.[16]  See, e.g., Bolton v. Cooper, Civ. Action No. 07-626, 2007 WL 2713259, at *2 (E.D. La. Sept. 14, 2007).  Accordingly, his period for seeking federal *habeas corpus* relief commenced on that date and expired one year later, on February 27, 2006,[17] unless that deadline was extended through tolling.

---

[14]  Rec. Doc. 8.

[15]  Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable here.

[16]  The rules of the Louisiana Supreme Court provide in pertinent part:  "An application seeking to review a judgment of the court of appeal ... after an appeal to that court ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."  Louisiana Supreme Court Rule X, § 5(a).  The Court of Appeal mailed notice of its judgment on January 26, 2005.  State Rec., Vol. II of V, certificate of mailing.

[17]  Because February 25, 2006, fell on a Saturday, the federal statute of limitations was extended until the end of the following Monday, February 27.  See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year

- 4 -

The Court first considers statutory tolling. The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). However, petitioner had no such applications pending before state courts at any point during the period from February 26, 2005, through February 27, 2006.

The Court notes that, for several reasons, it specifically rejects petitioner's contention, made in his mandamus application filed with the Louisiana Fourth Circuit Court of Appeal,[18] that he had filed a post-conviction application in the state district court on June 11, 2005. First, as the Court of Appeal noted in rejecting the mandamus application, there is no record of any such filing. Second, the Louisiana Department of Public Safety and Corrections has certified that it has no record of any outgoing legal mail sent by petitioner in June of 2005.[19] Third, one could reasonably infer that no such application had been filed because long thereafter, on or about March 1, 2006, petitioner filed with the state district court a motion for an extension of time to file his post-conviction application.[20] There is simply no evidence whatsoever that petitioner ever filed such an application.[21]

---

limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, or a legal holiday, the period runs until the end of the next day that is not one of those days).

[18] State Rec., Vol. IV of V.

[19] Supplemental State Rec., Vol. I of I.

[20] State Rec., Vol. V of V.

[21] The Court further notes that petitioner receives no tolling credit for the mandamus application for two reasons. First, petitioner dated the application "Feb. 28, 2006," which is one day after the

The Court notes that the United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can, in rare and exceptional circumstances, also be equitably tolled. See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotes and citations omitted). Petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations regarding his federal application for *habeas corpus* relief.

Because petitioner is entitled to neither statutory tolling nor equitable tolling, his federal application for *habeas corpus* relief had to be filed on or before February 27, 2006, in order to be timely. Petitioner's federal application was not filed until June 29, 2007,[22] and it is therefore untimely.

---

federal statute of limitations expired. Applications filed after the expiration of the statute of limitations have no bearing on the timeliness of a federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Second, even if the mandamus application had been filed within the limitations period, it would be of no consequence. The United States Fifth Circuit Court of Appeals has held that an application for a writ of mandamus does not qualify for tolling credit because it is not an application for state post-conviction relief or other collateral review. Moore v. Cain, 298 F.3d 361 (5th Cir. 2002).

[22] Petitioner signed his application on June 29, 2007. Rec. Doc. 1. That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes. Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

However, out of an abundance of caution, the Court alternatively notes that, for the following reasons, petitioner's federal application would be subject to dismissal even if his claims were considered on the merits.

### Standard of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

### Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Because there was no trial in this matter, the facts must be determined only from the motion transcripts. They reveal that, on June 16, 2003 at approximately 7:45 p.m., Jonathan Young was the victim of an armed robbery at the Hibernia Bank at Canal Street and Carrollton Avenue. Mr. Young, an employee of the Rent-A-Center located on North Broad Street, arrived at the bank to make the night deposit for his employer. As Mr. Young exited his vehicle, the defendant approached him and demanded the bank deposit. Mr. Young was surprised by the question because the envelope containing the deposit was still folded-up and concealed in his pocket. He asked the defendant what he was asking for, and the two exchanged words. The defendant then reached into a bag which was around his neck, withdrew a gun, and pointed it at Mr. Young. Mr. Young gave the defendant the deposit, consisting of approximately $2,500.00, and the defendant fled. Mr. Young drove back to his store and called the police.
> 
> A police officer responded to the 911 call and began interviewing the victim. Another officer, Patrick Conaghan, also responded. As Officer Conaghan did so, he was advised by the district personnel that a woman had just called in a report of a man running down the street in the 4500 block of Iberville. This witness, Ms. Sherry Thomas, reported that the running man got into a green SUV which took off at a high speed. When Mr. Young learned of the involvement of a green SUV, he spontaneously told the officers that Quintrell Avery, a disgruntled employee of the Rent-A-Center, had a green SUV. Armed with this information, Officer Conaghan compiled a photographic line-up containing Avery's picture and

> showed it to Ms. Thomas the next day. She positively identified Avery as the man she saw driving the green SUV.
> The police arrested Quintrell Avery a day or two after the robbery. After being advised of his rights, he made a statement to Officer Conaghan in which he admitted that he was the driver of the SUV. He stated that the defendant Leo Kearns was the person armed with a gun who robbed Mr. Young. With this information, Officer Conghan prepared a new line-up which contained Kearns' picture. Mr. Young made a positive identification of the defendant as the man who robbed him. Ms. Thomas was unable to identify Kearns.[23]

### Plea

Petitioner's first claim is that his conviction was based on a "plea of guilty which was unlawfully induced and not voluntary." He states: "Petitioner was persuaded into guilty plea by being promised to serve 6 of 10 years, threatened with a life sentence if he refused to take the time."[24]

The transcript conclusively refutes petitioner's contention that he was promised or understood that he would serve only six years of his ten-year sentence. The transcript clearly reflects that the judge, upon request from defense counsel, expressly warned petitioner that he would most likely be required to serve the full ten-year sentence:

> THE COURT:
> .... Mr. Kearns, your attorney has asked the Court to advise you that as far as the Court is concerned, I don't believe that the Department of Corrections will grant you any good time. I know that the sentence clearly is without benefit of parole, probation, or suspension of sentence, and that is what you'll hear the Court say if, indeed, I so sentence you. You will receive full credit for the time

---

[23] State v. Kearns, No. 2004-KA-1495, at pp. 2-3 (La. App. 4th Cir. Jan. 26, 2005) (unpublished); State Rec., Vol. II of V.

[24] Rec. Doc. 1, p. 4.

> you've served in jail following your arrest through this date. I am here to advise you, please, that if the Department of Corrections wishes to consider you for any good time, that is their prerogative, the ladies and gentlemen of that department, but I think it's best that you consider, without my giving you legal advice – although I should warn you, as I appreciate the law, of what your sentence should realistically be viewed as being – that you should consider your sentence to be a ten-year sentence, day for day, with full credit for time served.
> ....
> Your attorney has asked that I explain that to you clearly as to the, ah, good-time situation. Let me ask you, Mr. Kearns, before I do anything else, are you satisfied with that explanation and the idea that there is no probation, parole, or suspension?
>
> THE DEFENDANT:
>     Yes, sir.[25]

The trial judge even revisited the issue before accepting petitioner's plea:

> THE COURT:
>     .... Mr. Kearns, are you satisfied with everything the Court has explained to you, do you presume, as I told you you should presume, that your sentence will be, day for day, a ten-year sentence in the custody of the Department of Corrections with full credit for any time that you received and the balance to be served thereafter day for day –
>
> THE DEFENDANT:
>     Yes, sir.
>
> THE COURT:
>     – that any good time that may be allowed is strictly for the Department of Corrections to determine? You should again presume that there is none that they will even consider giving. And that, lastly, in connection with this matter, please be advised that the

---

[25] State Rec., Vol. II of V, transcript of April 26, 2004, pp. 2-3.

- 10 -

>    sentence clearly must be and will be without benefit of parole, probation, or suspension.[26]

Based on the foregoing, it is evident that petitioner's contention that he entered the plea agreement based on a promise or understanding that he would serve only six years of his ten-year sentence is patently false.

As to petitioner's contention that he was "threatened" with a possible life sentence if he declined the plea bargain, that claim is likewise meritless.

As a preliminary matter, the Court notes that petitioner has presented no evidence whatsoever that there was ever any such "threat." In fact, the evidence is to the contrary. Petitioner and his counsel signed a guilty plea form which included the following express acknowledgment: "I have not in anyway been forced, coerced or threatened to enter this guilty plea."[27] He also made the same acknowledgment when entering his plea in court.[28]

Further, in any event, it appears that petitioner did face a possible life sentence and that he was offered the plea bargain as a way to avoid that possibility. The transcript states:

>    THE COURT:
>    The one trial matter, I'm told, has been resolved. The State and the Defense have entered into the following agreement: The agreement is that Mr. Leo Kearns will enter a plea of guilty to one count of armed robbery, that the State will not, in any way, attempt to have the gentleman sentenced under the provision of law that would require an additional five-year sentence for the use of a firearm, with the understanding that the sentence the gentleman will

---

[26] State Rec., Vol. II of V, transcript of April 26, 2004, p. 9.

[27] State Rec., Vol. I of V, guilty plea form.

[28] State Rec., Vol. II of V, transcript of April 26, 2004, p. 10.

>    receive will be a ten-year sentence in the Department of Corrections, which, as I understand, is the minimum sentence allowed by law, without benefit of parole, probation, or suspension of sentence.
>
>    MR. IBERT [Assistant District Attorney]:
>    Yes, your Honor.
>
>    THE COURT:
>    Further, do you allege that there is a prior conviction that you feel could form the basis for a multiple bill?
>
>    MR. IBERT:
>    Yes, your Honor.
>
>    THE COURT:
>    And you have further indicated that you will not seek to file a multiple bill of information as it relates to any prior conviction or convictions.
>
>    MR. IBERT:
>    Yes, your Honor.
>
>    THE COURT:
>    Do you allege one or more prior convictions?
>
>    MR. IBERT:
>    Multiple prior convictions.[29]

In fact, the state court record reflects that petitioner had at least three prior felony convictions, including a 2000 conviction for possession of a stolen vehicle[30] and 2001 convictions for theft[31] and

---

[29] State Rec., Vol. II of V, transcript of April 26, 2004, p. 2.

[30] State Rec., Vol. V of V, docket master, minute entry dated February 17, 2000 (case number 410-672).

[31] State Rec., Vol. V of V, minute entry dated December 18, 2001 (case number 00-4373).

possession of heroin.[32]  Accordingly, it appears that if petitioner had declined the plea bargain and was convicted, the prosecution could have filed a multiple bill of information charging him as a fourth offender.  If he was indeed found to be a fourth offender, he would have faced a term of life imprisonment.  La.Rev.Stat.Ann. § 15:529.1(A)(1)(c).  Accordingly, even if petitioner was apprised that declining the plea bargain could expose him to a life sentence as a habitual offender, that was simply an accurate advisement of a factual consequence of such an action, not an impermissible threat.  Moreover, his plea is not rendered compelled or invalid simply because it was motivated by his "desire to accept the certainty or probability of a lesser penalty than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."  Brady v. United States, 397 U.S. 742, 751 (1970).

Accordingly, for all of the foregoing reasons, the Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his claim regarding his plea was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects that claim.

### Ineffective Assistance of Counsel

Petitioner next claims that his trial counsel was ineffective.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate

---

[32] State Rec., Vol. V of V, minute entry dated December 18, 2001 (case number 00-5401).

- 13 -

that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong for an ineffective assistance of counsel claim in a case involving a guilty plea, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing

as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to a state court decision rejecting such a claim unless petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1).

With respect to his ineffective assistance of counsel claim, petitioner, without elaboration, simply states: "Counsel did not pursue issues that would have proven petitioners innocense, also lying to petitioner."[33] This claim fails for several reasons. First, "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000); see also Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990). Second, petitioner has presented no evidence whatsoever to meet his burden of proof with respect to this claim. There is no evidence showing that any avenues were available to counsel to prove petitioner's innocence or that counsel ever lied to petitioner. Third, in any event, petitioner has failed to show that there is a reasonable probability that he would not have pleaded guilty but for counsel's purported, unspecified errors, and it is clear that there is no basis for such a showing. The evidence of petitioner's guilt was overwhelming, including his positive identification by the victim and his co-defendant's confession implicating him in the armed robbery. Further, in exchange for his plea, petitioner was given the ten-year minimum sentence for

---

[33] Rec. Doc. 1, p. 4.

his crime, whereas he faced a possible life sentence as a career criminal. For petitioner even to suggest that he would have declined the *extremely* generous plea agreement in this case is ludicrous.

Petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects that claim.

### False Imprisonment

Lastly, petitioner claims that he is falsely imprisoned, stating: "The state failed to prove beyond a reasonable doubt petitioners guilt. Witness could not identify the suspect at all. No evidence of a weapon yet charged with Armed Robbery, thus signifying petitioners innocense."[34]

Petitioner overlooks the fact that he *pleaded guilty*. As the United States Supreme Court has noted:

> A guilty plea is more than a confession which admits the accused did various acts. It is an admission that he committed the crime charged against him. By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.

United States v. Broce, 488 U.S. 563 (1989) (internal citations and quotation marks omitted). Further, "the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial – a waiver of his right to trial before a jury or judge." Brady v. United States, 397 U.S. 742, 748 (1970). By pleading guilty, petitioner *waived*

---

[34] Rec. Doc. 1, p. 5.

his right to hold the state to its burden to prove his guilt beyond a reasonable doubt at trial, and, therefore, the instant claim necessarily fails.

Petitioner has not demonstrated that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects the claim.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Leo Kearns, Jr., be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this nineteenth day of November, 2007.

*[signature: Daniel E. Knowles, III]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**